FAIR, J.,
for the Court:
¶ 1. Jo Ann Miller suffered from intense hip and back pain after working on an assembly line at Johnson Controls. She was ultimately diagnosed with spondy-losis, which required multiple surgeries over the course of several years.
¶2. Miller’s attending physicians concluded that her work at Johnson Controls had aggravated or accelerated the worsening of her back condition until it became disabling. The Mississippi Workers’ Compensation Commission disagreed, relying on an employer’s medical examination. But that examination was conducted before the cause of Miller’s back pain was known. We conclude that, when viewed in context, the employer’s examination does not contradict the findings of Miller’s attending physicians. The decision of the Commission as to Miller’s back injury is otherwise without factual support in the record and therefore must be reversed. We remand for a determination of the extent of Miller’s disability and a calculation of benefits.
FACTS
¶ B. Miller began her employment at Johnson Controls on July 7, 2008. At that time she was forty-three years of age. Miller initially steamed car seats, but after about six weeks she began working as a material handler, keeping the assembly line stocked with materials. After four weeks of that physically demanding work, she began feeling pain and tingling in her legs, and she had difficulty rising from a seat. Miller testified that on December 15, 2003, after working a twelve-hour shift, she began feeling intense pain in her back and hips. The pain continued through the night, and the next morning she went to an emergency room for treatment.
¶ 4. There was a dispute about whether Miller reported the December 2003 injury to her employer. It was uncontested, however, that she pursued short-term disability benefits and that such benefits were not supposed to be claimed in the case of workplace injuries. Miller eventually made a workers’ compensation claim for the December 2003 injury, which was denied, and she has not appealed that decision.

Medical History

¶ 5. After the 2003 injury, Miller was attended by Dr. Jacob Mathis, a neurosurgeon. Miller underwent an MRI scan that, in Dr. Mathis’s opinion, showed that her “hips [were] normal” but “indicate[d] a hypertrophied right L4/5 facet which is encroaching upon the L4/5 foramen and causing some narrowing and stenosis.” Dr. Mathis alternatively described the MRI scan as “revealing significant degeneration and bulges of both the L4/5 and L5/S1 disc cartilages.” Dr. Mathis ordered a lumbar discogram to “determine the integrity of the disc cartilages at L3/4, L4/5, and L5/S1.” The result was “normal,” in that “there was no evidence of any concordant pain on injection of her disc cartilages.” Dr. Mathis also reviewed a “contrast CT scan” that was performed at the same time as the discogram; he also described its results as normal. Dr. Mathis concluded that Miller would not require surgery. He referred her to a chiropractor and suggested continuing pain treatment.
¶ 6. Miller’s various treatments were described as conservative, and in Dr. Mathis’s opinion, they produced excellent results. By July 1, 2004, Miller was “comfortable,” “no longer [had] any tenderness of her sacroiliac [SI] joints,” and had a “normal neurological examination.” Dr. *251 Mathis cleared Miller to return to work on July 6, 2004, and she did.
¶7. Back at Johnson Controls, Miller was supposed to be gradually reintroduced to a full day of manual labor. But shortly after she returned, apparently through an accident or miscommunication, Miller ended up working full time carrying car seats back and forth on the assembly line. She stated that she would have to lift, carry, and manipulate bench seats that weighed sixty pounds. Miller did this until July 14, when she became so overwhelmed with pain that she required assistance to rise from a toilet seat in the restroom at work. Miller reported this injury to Johnson Controls. She also complained- of pain in her left hand and wrist, though it was disputed whether she immediately reported it as a workplace injury.
118. Miller returned to Dr. Mathis on July 15, where he concluded that Miller was again temporarily totally disabled and instructed her not to return to work. Miller again undertook what were described as conservative treatments — pain medicine, injections, and physical therapy. Dr. Mathis also noted that Miller was suffering from “very painful carpal tunnel syndrome of the left hand.” In 2001, Miller had surgery on her right hand for carpal tunnel syndrome; at that time her left hand had “mild to moderate” carpal tunnel syndrome. After the 2004 injury, Dr. Mathis observed that Miller’s left-hand carpal tunnel syndrome had worsened. Later that year, Miller underwent a surgical “left carpal tunnel release endoscope,” performed by Dr. Adam Lewis, who was associated with Dr. Mathis at the Jackson Neurosurgery Clinic.
¶ 9. On May 2, 2005, Miller met with Dr. Howard Katz, who conducted an employer’s medical evaluation. Dr. Katz reviewed Miller’s medical records up to that point and conducted a physical examination. He stated that he “[could] not identify a specific cause for [Miller’s] low back pain” but also noted that she did “not have apparent neurologic dysfunction or radicu-lopathy.” Dr. Katz concluded that her pain did “not appear to be discogenic but rather related to SI joint arthritis and right trochanteric bursitis.” He opined “to a reasonable degree of medical certainty [that] her job in December 2008 and in July 2004 neither caused nor aggravated her SI joint dysfunction or trochanteric bursitis[,] although I do believe it temporarily exacerbated that problem.” Dr. Katz also noted in his report that “[Miller] believes that both carpal tunnel surgeries were related to her work at her previous place of employment.”
¶ 10. Dr. Katz found that Miller had a three percent impairment to the body as a whole stemming from her SI joint dysfunction, trochanteric bursitis, general physical condition, and history of carpal tunnel syndrome. He added that Miller could “work at light duty and sedentary work at this time.”
¶ 11. On June 6, 2005, Dr. Mathis wrote a letter to Johnson Controls’ insurance carrier stating that he disagreed with Dr. Katz’s determination about whether Miller had injured her back and left wrist at Johnson Controls, noting that “[t]o date, all of her studies have failed to reveal the etiology of her continuing subjective low back pain-” Dr. Mathis agreed that Miller had reached maximum medical improvement and that she had a three percent impairment rating. After Dr. Katz rendered his opinion, the employer/carrier stopped paying Miller workers’ compensation benefits.
¶ 12. On October 24, 2005, Miller returned to Dr. Mathis, who at this point had not seen her for about a year. Dr. Mathis noted that despite her continuing treatment, Miller still had complaints of back *252 pain. “[T]o give [Miller] the benefit of the doubt,” he ordered another lumbar MRI. This MRI revealed significant degeneration since the MRI conducted before the June 2004 injury. The 2005 MRI “clearly indicated ... degenerative grade I spon-dylolisthesis at L4/5.” Dr. Mathis opined that “this slippage of the vertebra was felt to be related to the [July 2004] on-the-job injury because it was not present on her previous study.” A new lumbar discogram “now showed concordant back pain upon the injection of the L4-5 and L5-S1 levels.” Dr. Mathis also changed his mind as to whether Miller had reached maximum medical improvement and returned her to total temporary disability.
¶ 18. Dr. Lewis, Dr. Mathis’s partner at the Jackson Neurosurgery Clinic, performed an “anterior lumbar interbody fusion L4-5, L5-S1” on December 19, 2005. Miller continued to complain of pain following the surgery. A May 2006 x-ray showed a non-union at the L4-5 level, which required another surgery — a spire plate posterior fusion, performed on June 29, 2006. Miller also underwent a L3^4 and L4-5 lumbar laminectomy on June 30. In late 2006 Dr. Mathis recommended that Miller not return to her previous job or other strenuous manual labor to avoid further back injury.
¶ 14. Miller continued to suffer from pain. On February 6, 2007, she had a stimulator implanted that had to be removed shortly thereafter because it caused her some paralysis. Later that year, further back degeneration was discovered that resulted in another surgery in February 2009, which apparently was successful. Throughout this time, Miller continued to be treated for various pains, with varying degrees of success.

Workers’ Compensation Claim

¶ 15. Miller filed a petition to controvert on August 27, 2004. She claimed two injuries, one in December 2003 to her back and one in July 2004 to her back and left wrist. The employer/carrier admitted that there was some kind of back or hip injury in 2004, but it ceased paying benefits in June 2005, after Dr. Katz concluded that Miller’s pain stemmed from a temporary aggravation of preexisting hip/SI conditions.
¶ 16. A hearing was finally held before the administrative judge (AJ) on October 30, 2009. The AJ found that Miller did not prove a compensable injury in 2003, but her long history of back pain and treatment did arise out of the compensable 2004 back injury. The AJ also found the 2004 wrist injury to be compensable. The AJ concluded that the 2004 back and wrist injuries had left Miller permanently and totally disabled. The AJ also decided that the employer/carrier was liable for Miller’s surgeries performed by Dr. Lewis, notwithstanding that Miller had not sought approval beforehand with the employer/carrier.
¶ 17. The employer appealed to the full Commission, which reached a different result: it found that the back problems predated the 2004 injury and that the 2004 injury itself was only an aggravation of hip/SI conditions, as Dr. Katz had concluded. Thus, Miller’s surgeries and resulting occupational disability did not stem from the 2004 injury. The Commission concluded that Miller’s left-wrist carpal tunnel syndrome was also preexisting. On appeal, the circuit court affirmed the finding of the Commission, and Miller has appealed from that judgment.
STANDARD OF REVIEW
¶ 18. “The review of a decision of the Workers’ Compensation Commission is limited to determining whether the decision was supported by substantial evidence, was arbitrary and capricious, was *253 beyond the scope or power of the agency to make, or violated one’s constitutional or statutory rights.” Cook v. Home Depot, 81 So.3d 1041, 1044 (¶ 3) (Miss.2012) (citation and internal quotations omitted). “Because the Commission is the ultimate fact-finder and judge of the credibility of the witnesses, [an appellate court] may not reweigh the evidence before the Commission.” Id. at 1044-45 (¶ 3) (citation omitted).
DISCUSSION
¶ 19. In her brief on appeal, Miller enumerates five issues, but there really are only four, which we will address in the most logical order rather than the order presented.
1. Miller’s Back Injury
¶ 20. As we detailed above, in the years following her alleged workplace injury, Miller’s back condition deteriorated, causing her significant pain and requiring numerous surgeries. Some (although certainly not all) of her treatment history has been detailed above. Miller originally claimed to have suffered two workplace injuries at Johnson Controls, one in December 2003 and one in July 2004; but the December 2003 injury was found not to be work-related and that finding has never been contested by Miller. A 2004 injury was admitted by the employer, but it was contended to only be a temporary aggravation of hip/SI ailments, while Miller’s back condition was found by the Commission to predate the 2004 injury and thus was not compensable.
¶ 21. Before the Commission were the opinions of Dr. Mathis, Miller’s treating physician from 2003 to the time of the hearing in 2009, and Dr. Katz, who performed an employer’s medical examination in May 2005. Dr. Mathis opined that Miller’s back problems arose from her 2004 injury. Dr. Katz said Miller’s pain following the 2004 injury “seemed” to stem from hip problems that were only temporarily aggravated by her work.
¶ 22. The full Commission rejected Dr. Mathis’s conclusion. It noted that he had initially stated that Miller’s early 2004 MRI “reveal[ed] marked degeneration” and would probably require surgery; the Commission found that this contradicted Dr. Mathis’s later assertion that the etiology of Miller’s back pain complaints had been unknown. The Commission also noted that Dr. Mathis had found Miller at maximum medical improvement in mid-2005 and later changed his opinion.
¶ 23. After reviewing the record, we find that Dr. Mathis clearly explained this apparent contradiction and that his opinion in mid-2005, with which the Commission finds fault, was based on the evidence available to him at that time; in fact, Dr. Mathis’s assessment at that time was shared by Dr. Katz. Dr. Mathis stated that after the 2003 injury and the early 2004 MRI, he had initially believed Miller’s pain stemmed from the stenosis noted in the MRI. However, a discogram — a test to determine whether an abnormal spinal condition causes pain — showed that the back problem, at that time, was not causing Miller pain. The discogram and the success of Miller’s conservative treatments had led Dr. Mathis to conclude that Miller would not need surgery and could return to work in July 2004.
¶ 24. In the year following the July 2004 injury, no new MRI or discogram was performed. Both Dr. Mathis and Dr. Katz noted Miller’s complaints of back pain following the 2004 injury, but they could not find a cause; Dr. Katz stated this explicitly: “I cannot identify a specific cause for [Miller’s] low back pain.” Apparently re *254 lying on the prior discogram,[1] Dr. Katz stated that the back pain did not “seem” to be discogenic, but hip- and SI joint-related. Notably, Dr. Katz only increased his confidence “to a reasonable degree of medical certainty” when he went on to opine that Miller’s trochanteric bursitis and SI joint dysfunction were not caused by her employment at Johnson Controls.
¶ 25. Dr. Mathis also did not initially believe that Miller’s back pain following the 2004 injury was discogenic, but later in 2005 he decided to give Miller “the benefit of the doubt” (in his words at the time) and ordered a new MRI and new disco-gram. The 2005 MRI—the first since Miller’s 2004 injury—showed that the condition noted after the alleged 2003 injury had worsened and that Miller now had grade I spondylolisthesis. The new disco-gram confirmed that it was causing pain. At that point, Dr. Mathis ordered surgery. Later he opined in no uncertain terms that the slippage of the vertebra shown on the 2005 MRI, not present in the early 2004 MRI, was caused by Miller’s work at Johnson Controls in July 2004. There is nothing in the record to contradict these findings.
¶ 26. Ordinarily, “whenever the expert evidence is conflicting, [an appellate court] will affirm the Commission whether the award is for or against the claimant.” Raytheon Aerospace Support Servs. v. Miller, 861 So.2d 380, 336 (¶ 13) (Miss.2003). However, Dr. Katz did not express an opinion as to the cause of Miller’s back pain, nor did he have access to the late 2005 MRI that Dr. Mathis relied upon in reaching his decision.
¶27. After thoroughly reviewing the record, we conclude that the Commission simply misunderstood Dr. Mathis’s opinion. It was not only uncontradicted in the record, it is consistent with his own prior findings and those of Dr. Katz, based on what was known at the time. The Commission cannot simply disregard the uncontested and well-reasoned opinion of Miller’s treating physician; instead, when “the claimant makes out a prima facie case of disability, the burden of proof shifts to the employer.” Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 13 (Miss.1994). Johnson Controls offered nothing to refute Dr. Mathis’s opinion as to causation.
¶28. The Commission’s concern that the back condition was preexisting is also not a basis to deny compensation. “[A]n injury arises out of and in the cour[se] of employment even if it amounts to aggravation or exacerbation of a preexisting condition.” Id. Miller’s back condition, prior to the 2004 injury, was not symptomatic, and Miller was released to work in July 2004 without any restrictions. The preexisting condition was therefore not occupationally disabling, and to the extent the aggravation or acceleration is found to be disabling, it is fully compensa-ble under the law as it existed [2] at the time of the injury. See Stuart’s, Inc. v. Brown, 543 So.2d 649, 655 (Miss.1989) (“[Wjhere the evidence establishes ... a preexisting (symptomatic or asymptomatic) condition which causes the employee to experience no pre-injury occupational disability, apportionment may not be ordered.”).
*255 ¶ 29. We reverse the Commission’s decision on this issue and remand for a determination of benefits.
2.Miller’s Wrist Injury
¶30. Miller also claims to have injured her left wrist in July 2004. This injury was denied by the employer, and the Commission found, “based on the evidence as a whole,” that Miller did not prove she had sustained a compensable left wrist injury in July 2004.
¶ 31. The Commission cited several facts in support. Miller had been diagnosed with “mild to moderate” left-wrist carpal tunnel syndrome in 2001 and had had surgery recommended on both wrists at that time (but she only had the right wrist done). She had also complained to one of her treating physicians about increased pain in her left wrist several months before the alleged July 2004 injury. And she was noted by several physicians as attributing her left wrist pain to her work at her previous employment; she told one that she had not had surgery on the left wrist because her prior employer had closed down. Miller also did not report the wrist injury to Johnson Controls in July 2004, when she reported the back injury.
¶ 32. On the other hand, Miller’s left wrist was shown in 2004 to have degenerated significantly since the last test in 2001, and Dr. Mathis opined that the degeneration was caused by Miller’s employment at Johnson Controls. However, Dr. Mathis did not explain his findings on this point.
¶ 33. After reviewing the record, we conclude that because Miller complained of increased pain in her wrist shortly before the alleged injury, there was sufficient evidence for a reasonable finder of fact to have found for or against Miller on this issue. As the Commission is the finder of facts, our standard of review requires this Court defer to the Commission on this point.
3. Extent of Disability
¶ 34. As we have reversed the Commission’s decision as to the extent of Miller’s back injury, we likewise reverse its finding of the extent of Miller’s resulting disability. We remand to the Commission for such a determination consistent with our decision.
4. Payment for Dr. Lewis’s Surgeries
¶ 35. Dr. Lewis, Dr. Mathis’s partner, performed many of Miller’s back surgeries and provided her with other treatment. The Commission found that since the back ailment was not caused by Miller’s 2004 injury, the surgeries were not compensable. It also reluctantly found that, in the alternative, Johnson Controls could not be held liable for the treatment because Miller was not entitled to the services of two neurosurgeons without preapproval from the employer or the Commission. The former finding has been abrogated by our decision as to the extent of Miller’s 2004 injury, detailed above, and the alternative rationale is based on a misreading of the controlling statute.
¶ 36. Mississippi Code Annotated section 71-3-15(1) (Supp.2013) permits the employee to choose one physician, who may refer the employee to other specialists. See PDN, Inc. v. Loring, 843 So.2d 685, 688 (¶ 10) (Miss.2003). Section 71-3-15(1) has a limitation, however: “Referrals by the chosen physician shall be limited to one (1) physician within a specialty or sub-specialty area.” For a second referral within the same specialty area, the statute requires preapproval of the employer/carrier or the Commission, except in emergencies. Id.; see also Wal-Mart Stores, Inc. v. Patrick, 5 So.3d 1119, 1126 (¶¶ 20-21) (Miss.Ct.App.2008).
*256 ¶ 37. It is contended that Dr. Mathis, a neurosurgeon, could not refer Miller to Dr. Lewis, since Dr. Lewis is also a neurosurgeon. The flaw in this argument is that the Commission found that Dr. Mathis was Miller’s treating physician, a point that has been conceded by Johnson Controls in its brief on appeal. Thus there was only one referral from the treating physician (Dr. Mathis) to a neurosurgeon (Dr. Lewis), and preapproval of Dr. Lewis’s treatment was not required by the statute. We reverse and remand on this point, for an award of the costs of Dr. Lewis’s services in treating the 2004 back injury.
CONCLUSION
¶ 38. We affirm the Commission’s finding that Miller’s wrist problems did not arise from her employment at Johnson Controls. However, we reverse the Commission’s decision as to the extent of Miller’s 2004 back injury. We remand to that tribunal for a determination of the extent of Miller’s disability resulting from the 2004 back injury and for an award of the costs of treating that injury, including the surgeries performed by Dr. Lewis.
¶ 39. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY IS AFFIRMED IN PART AND REVERSED IN PART, AND THIS CASE IS REMANDED TO THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEES.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR.

. Dr. Katz reviewed Miller’s medical records and performed an in-person physical examination, but he did not give a detailed explanation for his findings.

. Mississippi Code Annotated section 71-3-7(2) (Supp.2013), the statute governing apportionment in workers’ compensation cases, was amended in 2012 to provide that for injuries occurring after July 1, 2012, ‘'[t]he preexisting condition does not have to be occupationally disabling for ... apportionment to apply.”