JAMES, J.,
for the Court:
¶ 1. This appeal proceeds from a Mississippi Workers’ Compensation Commission order granting a claimant’s motion to compel payment of medical treatment relating to a kidney condition caused by medication taken for an admittedly compensable lung injury. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶2. On October 6, 1997, the claimant, Larry B. Harris, inhaled materials under a building while installing cables in the course of his employment with BellSouth Telecommunications Inc. (BellSouth). BellSouth provided compensation benefits to Harris for the pulmonary (lung) condition caused by the inhalation. Nevertheless, on December 12, 2000, Harris filed a petition to controvert, and a full hearing on the merits was conducted on February 20, 2009, before an administrative judge (AJ).
¶3. The parties stipulated that Harris, acting in the course and scope of his employment with BellSouth on October 6, 1997, was involved in a work-related incident, which ultimately resulted in a respiratory condition. Remaining issues to be decided were: (1) the existence/extent of temporary disability, if any; (2) existence/extent of permanent disability and/or loss of wage-earning capacity, if any; and (3) reasonableness/necessity of certain medical treatment. On September 10, 2009, the AJ entered an order finding that Harris suffered no permanent disability and/or loss of wage-earning capacity from his respiratory-inhalation injury and was not entitled to additional temporary disability benefits.
¶4. On March 1, 2010, the Commission amended the AJ’s order and found that Harris was entitled to permanent partial disability benefits. The Commission also ordered BellSouth and its carrier to continue to provide and pay for all reasonable and necessary medical services and treatment in accordance with Mississippi Code Annotated section 71-3-15 (Supp.2014). BellSouth did not appeal the Commission’s decision and provided compensation benefits to Harris.
¶ 5. During the course of Harris’s treatment for his compensable lung injury, he was prescribed certain medications, including amphotericin B. Dr. Murphy S. Martin, a nephrologist and treating physician, opined that the amphotericin B caused complications with Harris’s kidney, which required kidney medication. Harris requested medical payments from BellSouth’s carrier for the medication prescribed for Harris’s renal (kidney) insufficiency diagnosed by Dr. Martin. However, BellSouth’s carrier denied payment despite Harris’s insistence that his *911 renal insufficiency was causally related to his lung injury.
¶ 6. On November 7, 2011, BellSouth filed a motion for an employer’s medical examination (EME) to be performed by Dr. Wilson Parry under Mississippi Code Annotated section 71-3-15. On December 19, 2011, Harris filed a motion to compel payment of certain medical treatment and response to BellSouth’s motion for an EME. A hearing was conducted before the AJ on the competing motions. On April 16, 2012, the AJ ordered BellSouth and its carrier to provide all medical benefits regarding Harris’s treatment, including medication as opined by Dr. Martin to be related to his initial lung injury at work.
¶ 7. BellSouth filed a petition for review. The sole issue on review was the causal relationship of Harris’s kidney and other problems to his initial work-related lung injury. More than a month after the AJ ruled in Harris’s favor, BellSouth gave notice on May 22, 2012, that it retained Dr. Parry to review Harris’s medical records and give an opinion on the central question of causation, even though the record had been closed. A hearing before the Commission was held on July 16, 2012.
¶ 8. Following the hearing, on October 18, 2012, BellSouth submitted a supplementation to its brief of law and fact containing Dr. Parry’s opinion as additional evidence to be considered. Dr. Parry concluded that the medication did not cause or had very little impact on Harris’s renal insufficiency. Harris filed a motion to strike the supplementation, which was granted by the Commission, and it was given no consideration whatsoever because it was untimely under Mississippi Workers’ Compensation Procedural Rule 9.
¶ 9. On November 16, 2012, the Commission affirmed the AJ’s order granting Harris’s motion to compel payment of medical treatment. The Commission considered the opinions and observations of several physicians in arriving at its decision, including Dr. Martin, a nephrologist specializing in the treatment of kidney diseases and disorders. On February 25, 2011, Dr. Martin stated:
Mr. Harris is being treated by me for stage III chronic kidney disease. This is caused by prior amphotericin B therapy for aspergillus contracted while he was at work. He had amphotericin induced renal failure with [the] biopsy showing secondary focal segmental glomerulosclerosis. He also received prednisone therapy because of the lung disease that resulted in diabetes that persists to this day. It is my opinion that all of his therapy at this time for his hypertension, chronic kidney disease, secondary hyperparathyroidism and vitamin D deficiency, lung disease, and diabetes is a result of his aspergillosis infection contracted while at work.
¶ 10. The Commission also considered the conclusions reached by Dr. William Causey, an infectious-disease specialist who treated Harris in 1998. Dr. Causey noted: “[Harris] has slightly low potassium and slightly elevated creatinine[,] which I believe are residual effects of the amphotericin that he received for his pulmonary aspergillosis back in late 1997.” Dr. Causey also noted that Harris’s laboratory abnormalities “probably reflect residual [a]mphotericin B effects.” Dr. Obie McNair, a treating physician during Harris’s hospital stay in 1998, noted that Harris’s initial medical treatment was having a negative effect on his kidneys and acknowledged his low potassium and abnormal creatinine readings while undergoing amphotericin B therapy.
¶ 11. Dr. Douglas Campbell of the University of Mississippi Medical Center (UMMC), a specialist in the pulmonary clinic, noted on September 25, 2005, that *912 Harris was referred to a nephrologist because of his increased creatinine, which he thought might be due to amphotericin B treatment. Dr. John R. Spurzem, professor of medicine in the pulmonary, critical-care and sleep-medicine division at UMMC, stated on September 8, 2010, that “[s]ubsequeht physicians have assumed that his mild chronic renal insufficiency has been related to the [ajmphotericin, and I have no reason to think otherwise.”
¶ 12. The Commission’s order provided in pertinent part:
The [AJ] considered and weighted a significant amount of medical evidence concerning the potential complications which can arise from the use of [ampho-tericin B, which was given to Mr. Harris in 1997 and 1998 following his lung injury in late 1997. We find more than enough credible evidence linking Mr. Harris’s current renal and other problems to the use of the medicine. The opinions of all the different physicians involved are not unanimous, but the greater weight of their testimony support[s] the causative link found by the [AJ] and by us.
It is from this order of the Commission that BellSouth appeals to this Court. Findingno error, we affirm the decision of the Commission.
STANDARD OF REVIEW
¶ 13. “This Court employs a substantial-evidence standard of review to resolve a workers’ compensation case; however, the standard of review is de novo when the issue is one of law[.]” Forrest Gen. Hosp. v. Humphrey, 136 So.3d 468, 471 (¶ 14) (Miss.Ct.App.2014). “Absent an error of law, we must affirm the Commission’s decision if there is substantial evidence to support the Commission’s decision.” Id. “[T]he Commission is the trier and finder of facts.” Id. “If the Commission’s order is supported by substantial evidence, this Court is bound by the Commission’s determination, even if the evidence would convince us otherwise if we were the fact-finder.” Id.
DISCUSSION
¶ 14. Although BellSouth advances several arguments in its brief, BellSouth’s appeal ultimately consists of two assignments of error, which are (1) whether the Commission erred by allowing Harris’s claim for his kidney condition to be pursued as a component of his admittedly compensable lung-injury claim; and (2) whether there was insufficient scientific and medical evidence within the record to establish that amphotericin B therapy constituted the cause of Harris’s renal disease. We find no error in the Commission’s decision and affirm.
I. Whether the Commission erred in allowing Harris’s kidney condition to be pursued as a component of his original compensable lung injury-
¶ 15. “The courts have generally held that, where, without the fault of the employee, his original compensable injury is aggravated by medical or surgical treatment, there is such a causal connection between the original injury and the resulting disability or death as to make them compensable.” McBride v. Wetmore & Parman, Inc., 241 Miss. 743, 754, 133 So.2d 261, 265 (1961). “When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless’ it is the result of an independent intervening cause attributable to claimant’s own intentional conduct.” Medart Div. of Jackes-Evans Mfg. Co. v. Adams, 344 So.2d 141, 143 (Miss.1977). “As with pre *913 existing conditions,- an employer remains liable for subsequent injuries related to a prior work[-]related > injury.” Wal-Mart Stores, Inc. v. Fowler, 755 So.2d 1182, 1185 (¶ 11) (Miss.Ct.App.1999). “An employer also remains liable if a prior compensable injury makes the claimant more prone to a subsequent injury.” Howard Indus., Inc. v. Robinson, 846 So.2d 245, 257 (¶ 40) (Miss.Ct.App.2002).
¶ 16. In McBride., 241 Miss. at 755-56, 133 So.2d at 265-66, a claimant suffered a disabling heart condition as a result of surgery on a compensable hernia. The Court held that the claimant was entitled to compensation for permanent partial disability resulting from the disabling heart condition caused by the surgical operation. Id. Similarly, Harris’s renal insufficiency was a natural consequence that flowed from thé treatment for his original compensable lung injury. Dr. Martin gave his opinion that there was causal connection between the treatment for the lung injury and the subsequent kidney condition. Several other treating physicians corroborated the causal connection.
¶17. BellSouth argues that Harris’s claim at the initial hearing on the merits was narrowly limited to his respiratory injury. However, two of the enumerated issues to be decided by the AJ were the existence/extent of permanent disability and/or loss of wage-earning capacity, if any, and the reasonableness/necessity of certain medical treatment. The initial order entered by the Commission was not limited in nature, and no stipulation was made otherwise by the parties. The Commission ordered BellSouth and its carrier to continue to provide and pay for' all reasonable and necessary medical services and treatment in accordance with section 71-3-15, which provides in part: “The employer shall furnish such medical, surgic'al, and other attendance or treatment, nurse and hospital service, medicine, crutches, artificial members, and other apparatus for such period as the nature of the injury or the process of recovery may require.”
¶ 18. BellSouth was certainly obliged to argue the -existence/extent of a permanent injury and the existence/reasonableness of medical treatment due to the issues still in dispute before the AJ. BellSouth had years to fully investigate the extent of Harris’s injury and to determine what potential future' medical treatments- would be reasonable and necessary. Moreover, prior to the initial hearing on the merits, BellSouth filed two motions to compel EMEs on June 30, 2006, and December 15, 2008. Neither motion was adjudicated, and BellSouth did not appeal the Commission’s final decision.
¶ 19. BellSouth argues that it is forced to defend what is tantamount to a products-liability claim for the drug that caused Harris injury and was given no opportunity to defend such a claim without the benefit of discovery and applying the appropriate evidentiary standards. To the contrary, BellSouth was aware of the potential for the renal-insufficiency component of Harris’s claim in January 2009 through its own retained expert, Dr. David C. Collipp. Prior to. the initial hearing on the merits, BellSouth filed an EME for the purpose of determining what conditions were related to Harris’s occupational injury and what treatment could be reasonably expected in the future. Although Dr. Col-lipp did not perform an EME, he prepared a report and gave an opinion on Harris’s renal insufficiency. Dr. Collipp’s report was admitted into evidence and considered by the AJ.
¶20. Dr. Collipp stated in his report, dated January 28,2009, that ‘
[Harris] has renal disease, which appears unrelated to [BellSouth], and appears related to other health problems, also unrelated to his occupational expo *914 sure. He may have had [a]spergillosis, which could also be an occupational exposure from his work, for which he had treatment with amphotericin B among other medications. This does not appear to have impacted on his renal function, from the available information.
Indeed, BellSouth was aware of the causal connection between the renal insufficiency and the amphotericin B treatment because its own expert gave an opinion on this precise issue prior to the initial hearing on the merits. BellSouth had every opportunity and incentive to ensure that Harris’s claim was limited in nature according to its own retained expert’s opinions.
¶ 21. BellSouth cites Texas Gas Transmission Corp. v. Dabney, 919 So.2d 1079 (Miss.Ct.App.2005), for the proposition that Harris should have been required to file a motion to reopen his claim. In Dab-ney, the claimant filed a petition to controvert, alleging that he had received a snakebite on September 1, 1992, while in the course and scope of his employment with his employer. Id. at 1081 (¶ 1). On July 17, 1995, the AJ entered an order and found that the claimant had a compensable injury as a result of the snakebite and awarded temporary total disability benefits and fifty-two and one-half weeks of permanent partial disability benefits. Id. The AJ further ordered the employer and its carrier “to provide medical services and supplies as required by the nature of [the claimant’s] injury and the process of his recovery therefrom.” Id. The Commission affirmed the order, and his employer did not appeal the decision. Id. Over three years later, on May 7, 1999, the claimant filed a motion seeking to reopen the case and to compel the payment of a subsequent medical bill that the claimant alleged was related to the snakebite. Id. at (¶ 2).
¶ 22. In Dabney, the claimant was seeking to amend the Commission’s order to include additional permanent partial disability benefits, which had concluded. In addition, the claimant’s motion sought to compel the payment of a subsequent medical bill. Unlike the claimant in Dabney, who was seeking to reopen the case in order to amend the Commission’s order to award additional benefits for temporary total disability or permanent partial disability, Harris was solely seeking to compel the payment of medical treatment. Harris was not seeking additional temporary total disability or permanent partial disability benefits. Harris simply filed a motion to compel payment of medical treatment to enforce the Commission’s order that provided for the payment of all reasonable and necessary medical services under section 71-3-15.
¶ 23. Alternatively, BellSouth cites Johnson Electric Automotive, Inc. v. Colebrook, 995 So.2d 791 (Miss.Ct.App.2008), for the proposition that Harris should have been required to file a new petition to controvert for his kidney condition. In Colebrook, the claimant sustained work-related injuries to her right shoulder in 1997 and her neck in 1998. Id. at (¶ 4). She entered into a settlement for the 1997 and 1998 injuries. Id. at n. 2. Later, the claimant filed petitions to controvert in December 2000 and January 2001, alleging she aggravated her old injury or sustained a new injury while packing motors on April 6, 2000, and sustained a separate injury on July 18, 2000, to her neck. Id. at 793-94 (¶ 5).
¶24. In Colebrook, the claimant suffered four different injuries at work on four different dates. After settling her claims for her first two injuries, she filed two separate petitions to controvert for her subsequent two injuries. Thus, we find that Colebrook is factually distinguishable from Harris’s case because Harris suffered a single injury at work and the *915 Commission found that the kidney injury was causally related to his initial injury at work.
¶25. Mississippi Code Annotated section 71-3-53 (Rev.2011) provides “that the Commission has continuing jurisdiction to ‘review a compensation case, issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation.’ ” Walls v. Franklin Corp., 797 So.2d 973, 976 (¶ 18) (Miss.2001) (quoting Miss.Code Ann. § 71-3-53). Harris called on the Commission to resolve the dispute, and a hearing was held before the AJ and Commission on appeal. BellSouth had ample opportunity to determine the extent of Harris’s claim and the potential for future medical treatment. BellSouth was also afforded a meaningful opportunity to defend Harris’s motion to compel medical treatment. We find no error in the Commission considering Harris’s motion to compel medical treatment as a component of his original compensable lung injury.
II. Whether the Commission’s decision was supported by substantial evidence.
¶26. BellSouth also argues there was insufficient scientific and medical evidence within the record to establish that ampho-tericin B treatments received in 1998 constitute the cause of Harris’s renal disease.
¶ 27. The Commission is the fact-finder and also the judge of witness credibility; appellate courts cannot reweigh the evidence and are thus highly deferential to the Commission’s decisions. Short v. Wilson Meat House, LLC, 36 So.3d 1247, 1251 (¶ 23) (Miss.2010). Moreover, it is entirely possible that a reasonable person could reach a different conclusion than the full Commission reached and that such a decision would be supported by substantial evidence. Colebrook, 995 So.2d at 797 (¶ 15).
¶ 28. On November 7, 2011, BellSouth filed a motion for an EME to be performed by Dr. Parry. After the AJ hearing and three months after the Commission hearing, BellSouth filed a supplementation containing Dr. Parry’s opinion on the causation issue. Mississippi Workers’ Compensation Commission Procedural Rule 9 requires motions to admit additional evidence to be filed in writing at least five days prior to the date of the hearing before the full Commission. Dep’t of Agric. & Commerce v. Austin, 150 So.3d 994, 999 n. 3 (Miss.Ct.App.2014) (citation omitted). The Commission gave no consideration to Dr. Parry’s untimely submitted opinion. The Commission has the authority to adopt procedural rules. Miss.Code Ann. § 71-3-85(3) (Rev.2011). And “the Commission is entitled to require adherence to its procedural rules.” Short, 36 So.3d at 1255 (¶ 36). Surely BellSouth had supporting medical evidence at the time it refused to provide compensation for treatment, which could have been offered at the hearing before the AJ or timely filed where it could have been considered by the Commission. Accordingly, we find no error in the Commission exercising its discretion in denying BellSouth’s untimely attempt to supplement the record. Other than Dr. Parry’s excluded opinion and Dr. Collipp’s opinion in 2009, there are no significant medical opinions in the record supporting BellSouth’s position that the medical treatment for Harris’s kidney condition is not related to his treatment for his lung injury.
¶ 29. BellSouth argues that the medical evidence considered in this case consists of possibilities and not reasonable medical certainty. However,
[a] doctor’s use of such words as ‘might,’ ‘could,’ ‘likely,’ ‘possible,’ and ‘may have,’ particularly when coupled with other credible evidence of a non-medical character, such as a sequence of symptoms *916 or events corroborating the opinion, is in most states sufficient to sustain an award.... The compensation process is not a game of ‘say the magic word,’ in which the rights of injured workers should stand or fall on whether a witness happens to choose a form of words prescribed by court or legislature. Dixie Contractors, Inc. v. Ashmore, 349 So.2d 532, 533 (Miss.1977).
¶ 30. The Commission, which is the ultimate fact-finder in this case, undertook a thorough review of all of the medical evidence regarding the causal link between Harris’s initial lung injury and subsequent kidney condition. “That we may have found the fact[s] otherwise, had we been the triers of the fact, is similarly of no moment, so long as the record contains credible evidence which, if believed, would take the Commission’s decision out of the realm of the arbitrary.” Walker Mfg. Co. v. Cantrell, 577 So.2d 1243, 1247 (Miss.1991). The Commission found there was more than enough substantial credible evidence to support the AJ’s order to award Harris compensation for medical treatment as recommended by his treating physician, Dr..Martin. Finding no error in the Commission’s decision, we agree and affirm.
¶ 31. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.