FAIR, J.,
FOR THE COURT:
¶ 1. James Crittenden sought workers’ compensation benefits from Kellogg Brown & Root LLC (KBR), claiming he suffered severe back pain from either being struck with a heavy object falling from a forklift, or from picking it up and putting it back on the lift. KBR admitted- that there was a minor hip injury, essentially a bruise, but it denied that the incident was responsible for the severe disability Crit-tenden claimed. The administrative judge found the ailments compensable. KBR successfully appealed to the full Mississippi Workers’ Compensation Commission, which, vacated the AJ’s decision and found that Crittenden’s back condition was-not work related and, therefore, not compensa-ble.
¶2. Crittenden appeals. Because our standard of review requires this Court to *850 defer to .the factual findings of the Commission, we affirm..
STANDARD OF REVIEW
¶ 3, “[R]eview of a decision of the Workers’ Compensation Commission is limited to determining whether the decision was supported by substantial evidence, was arbitrary and capricious, was-beyond the scope or power of the agency to make, or violated one’s constitutional or statutory rights.” Cook v. Home Depot, 81 So.3d 1041, 1044 (¶ 3) (Miss. 2012) (citation omitted). “Because the Commission is the ultimate fact-finder and judge of the credibility of the witnesses, [an appellate court] may not reweigh the evidence before the Commission.” Id. at 1044-45 (¶ 3) (citation omitted). Questions of law, on the other hand] are reviewed de novo. Ladner v. Zachry Constr., 130 So.3d 1085, 1088 (¶ 9) (Miss. 2014).
DISCUSSION
¶ 4. Crittenden alleged that he sustained a work-related injury to his back and hip on October 3, 2013, while working as a pipefitter for KBR. Crittenden and a coworker were gathering supports for pipe fitting systems, which weighed seventy to eighty pounds. While picking up the supports with a forklift, one slipped and struck Crittenden in'the right hip, Critten-den then lifted the support and put it back on the forklift. He testified that he did not initially suspect a serious injury, but when he woke up the next day, he could barely walk because of the pain. Crittenden was subsequently diagnosed with spinal steno-sis and, though it was disputed, a herniated disc. Different doctors at different times came to different conclusions about the extent of resulting disability, though Dr. David Bomboy, the employer’s medical examiner, concluded that Crittenden could not work because of the pain (though he concluded it was not caused by the on-the-job injury).
¶ 5. Both Crittenden and KBR stipulated to the incident and a hip contusion. Otherwise, they agreed to disagree on the nature of his back problems' and presented to the Commission the single issue of causation of his back injury, specifically “whether the claimant suffered a work related injury to his back on October 3, 2013.”
¶6. After a hearing, where Crittenden testified, and both sides presented medical records or depositions, the AJ found:
It is obvious there [are] conflicting medical opinions from the Claimant’s treating physicians. However, after considering the pleadings, the record evidence, the applicable law, and the credibility of the Claimant’s testimony, this Administrative Judge finds and concludes that James Crittenden has met his burden of proof to show that he sustained a com-pensable work-related back injury, as he alleged, on or about October 3, 2013. It is apparent based on the medical records alone that the Claimant’s current medical condition was aggravated by his work-related injury. Therefore, the Claimant is entitled to disability and 'medical benefits pursuant to the Mississippi Workers’ Compensation Act.
¶7. KBR appealed and, after briefing, the Commission disagreed with the AJ. In its order, it noted:
Following the injury, Claimant was seen by Dr. Terry Taylor at the Occupational Medical Clinic on October 4, 2013. Claimant presented with a history that “[p]atient states a 701b piece of steel bumped his right hip while unloading it from a forklift,” Dr. Taylor’s physical examination of Claimant was normal, and x-rays obtained of Claimant’s pelvis/hip did not show any acute findings. Claimant was diagnosed with a right hip *851 contusion and returned to normal employment. Claimant returned to see Dr. Taylor on October 8, 2013. Claimant again presented with complaints of pain in his right hip. No new findings were noted by Dr. Taylor, and Claimant was discharged to full duty employment.
Claimant was later seen by Dr. Yekater-ina Karpitskaya at the Bienville Orthopedic Specialists clinic on October 16, 2013. Claimant presented with complaints of low back pain and a history, of being struck by a pipe support in “his low/back right side at work.” Dr. Karpit-skaya reviewed Claimant’s MRI and noted degenerative disc disease present at L4-5 and L5-S1, with no findings of an acute injury. Claimant returned on November 20, 2013, at which time Dr, Karpitskaya noted.the following: “The patient returns for a follow-up of the low back pain. He reports the symptoms have resolved. The patient says he is doing a lot better. He is ready to return to work. Dr. Karpitskaya released Claimant to maximum medical improvement on November 20, 2013, with no subluxations, full range of motion, no muscle weakness, normal muscle tone, and no muscle atrophy.
Claimant next treated with Dr. Charles Winters on January 14, 2014. Claimant presented with complaints of low back, hip, and leg pain. Claimant completed a medical history form at Dr. Winters’s office wherein he specifically denied havT ing any prior back pains. Dr. Winters testified via deposition that Claimant’s history played a significant role in his opinion regarding causation and that-he had no prior knowledge of Claimant’s previous back complaints. Dr. Winters did opine that the Claimant sustained a disc herniation as the result of the incident;' however, Dr. Winters testified Claimant did not provide a history of prior back problems which included.rad-icular pain. According to Dr. Winters, evidence of radicular pain is a primary symptom of a patient with a herniated disc. ■ .
Claimant was examined by Dr. David Bomboy on February 18, 2014, as part of an employer’s medical examination (EME). Dr. Bomboy reviewed Claimant’s medical records and performed a physical exam. Dr. Bomboy stated' that Claimant' sustained a contusion to his right hip and that all; matters' related' to his work injury had resolved. Lastly, Dr. Bomboy concluded that Claimant was unable to work due to his long-standing, preexisting lumbar condition which was not related to Claimant’s injury at work oh October 3, 2013.
Claimant’s credibility is cailed into question regarding hip denial of back pain complaints existing prior to his October 3, 2013, right hip injury at work. Although Claimant testified at the hearing before the Administrative Judge that he “fell twice” and “could barely walk” the day after he was struck on the right hip at work, no such history was provided to Dr, Terry Taylor. Additionally, Claimant completed a “Pre-Placement Medical History Addendum” form at the time of his first visit with Dr. Taylor. The form specifically asks the following of each patient: “Please answer yes or no if you have EVER HAD these problems and date of each illness or injury.” Item 7 on the form , asked Claimant about “back trouble or pain” to which Claimant responded, “No.”
Claimant further testified at the hearing before the Administrative Judge that his pre-existing back problems were: “Very, very minor.” Additionally, Claimant denied having pre-existing back pain that radiated , into his right leg. Claimant’s testimony and medical history provided to his doctors is questionable given his *852 well-documented, pre-existing back treatment with Dr. Kevin Cooper.
Claimant was treated by Dr. Kevin Cooper on February 7, 2011, at which time he provided history of lower back pain with pain radiating into his right leg.' Claimant provided a history of a vertebral fracture that , had occurred twenty years prior in an automobile accident and that the lumbar and thigh pain was described as “intermittent and worsening.” Claimant indicated to Dr. Cooper that he wanted to explore pain.management treatment for his pain. Claimant was placed on Lortab medication for his back pain and continued treating with Dr. Cooper through April 8, 2013. At that time, Dr. Cooper discharged Claimant from his treatment due to Claimant’s violation of the controlled substance agreement issued as part of his pain medication treatment.
In reviewing Claimant’s medical history, the Commission notes that Dr. Taylor treated Claimant for a hip contusion and released Claimant to full duty employment. No disabling back injury was identified by Dr. Taylor. Likewise, Dr. Karpitskaya noted Claimant to have right hip pain and lumbar degenerative disc disease. Similar to 'Dr. Taylor, Dr. Karpitskaya was of the impression Claimant’s symptoms had resolved and he could return to full duty employment. Dr. Bomboy • reviewed the entirety of Claimant’s medical records, and he also obtained a history and physical examination of Claimant. Dr. Bomboy also concluded that Claimant’s hip injury at work had resolved and -that any ongoing disability of Claimant was related to his long-standing low back injury as noted in the records of Dr. Cooper.
Of the four doctors who examined and treated Claimant after his hip injury at work, only- Dr. Winters provided an opinion that Claimant’s complaints of back pain were related to his October 3, 2013 injury at work. However, Dr. Winters later testified that he was not provided any history of Claimant’s back problems or of his documented complaints of lumbar pain radiating into the right leg. Dr. Winters candidly admitted he placed great weight upon Claimant’s self-reported medical history in arriving at his opinion of medical causation for the low back complaints.
Given the above claim facts consisting of Claimant’s testimony, as well as the records of Claimant’s medical treatment, the Commission finds that the weight of evidence in this claim does not support a finding that Claimant sustained an injury to his low back in the course and scope of his employment on Octobér 3, 2013.
(Citátions omitted).
¶ 8. On appeal, Crittenden contends that his testimony was uncontradicted and that the Commission could not' properly make determinations on his credibility without seeing his testimony in person. Crittenden posits that “although there may be slight evidence to support” the decision of the Commission as the "ultimate finder of fact, the “substantial evidence supports the original order” of the AJ in favor of compensability. He contends that this Court should still have “the definite and firm conviction that a mistake has been made by the Commission.” Barber Seafood Inc. v. Smith, 911 So.2d 454, 461 (¶ 27) (Miss. 2005) (citation omitted).
¶ 9. Crittenden’s argument runs contrary to -well-established Mississippi law, which we are constrained' to follow. The Mississippi Workers’ Compensation Commission is the ultimate judge of the credibility of witnesses. Id. Even though the Commission did not witness Crittenden’s testimony in person, it did not act arbi *853 trarily or capriciously in considering his history of inconsistencies and omissions in statements made to his treating physicians in determining the weight to attribute to Crittenden’s account and the medical findings that depended upon it.
¶ 10. Moreover, as the AJ noted, there were competing medical opinions in this case, and the difference of opinion was not founded on judgments of Crittenden’s credibility. “Where medical expert testimony is concerned, [the Mississippi Supreme Court] has held that whenever the expert evidence is conflicting, the [reviewing court] will affirm the Commission whether the award is for or against the claimant.” Raytheon Aerospace Support Servs. v. Miller, 861 So.2d 330, 336 (¶ 13) (Miss. 2003). “[T]he Commission has the responsibility to apply its expertise and determine which evidence is more credible.” Hamilton v. Southwire Co., 191 So.3d 1275, 1282 (¶ 24) (Miss. Ct. App. 2016) (citation omitted).
¶ 11. Dr. Winters’s opinion of causation was largely based on his finding that the MRI showed that Crittenden suffered from a disc herniation (an acute injury Dr. Winters believed had beén caused by the incident) in addition to stenosis (a degenerative, preexisting disease). While Dr. Winters did state that it was 'his opinion a herniation had occurred, he repeatedly suggested that he was not .absolutely confident in his reading of the MRI. The other physicians who had examined the MRI— Dr. Bomboy and Dr. Karpitskaya—had not noted a herniation. Thus, there was clearly substantial evidence to reject Dr. Winters’s opinion without resorting to Critten-den’s credibility.
¶ 12. After reviewing the record in this case, it is apparent to us that the Commission’s decision is- supported by substantial evidence and was not arbitrary and capricious or clearly erroneous. Therefore, we defer to the Commission as finder of fact and affirm its judgment.
¶ 13. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, WILSON AND GREENLEE, JJ., CONCUR. WESTBROOKS, J., NOT PARTICIPATING.