# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-WC-01437-COA

**PRAIRIE FARMS DAIRY AND ACE AMERICAN INSURANCE COMPANY**                                    **APPELLANTS**

**v.**

**GREGORY GRAHAM**                                    **APPELLEE**

DATE OF JUDGMENT:                    09/19/2017
TRIBUNAL FROM WHICH APPEALED:        MISSISSIPPI WORKERS' COMPENSATION COMMISSION
ATTORNEYS FOR APPELLANTS:            JOHN S. GONZALEZ
                                     LINDSEY BLACKWELL HARRIS
ATTORNEYS FOR APPELLEE:              JAMES KENNETH WETZEL
                                     GARNER JAMES WETZEL
NATURE OF THE CASE:                  CIVIL - WORKERS' COMPENSATION
DISPOSITION:                         AFFIRMED - 07/17/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., CARLTON AND WESTBROOKS, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     In this appeal we must determine whether the Mississippi Workers' Compensation Commission (Commission) erred when it affirmed and adopted the administrative judge's (AJ) findings that Gregory Graham (1) sustained a 50% industrial loss of use of his left knee and was entitled to disability benefits, and (2) sustained a compensable back injury and was entitled to related medical expenses and temporary total disability benefits. Finding that the Commission's decision was supported by substantial credible evidence, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On July 25, 2014, Graham, who was employed by Prairie Farms Dairy to deliver milk

to commercial establishments, injured his left knee while completing a delivery at a local grocery store in Moss Point, Mississippi. According to Graham, when he stepped off the truck and onto the pavement while holding a milk crate, his "knee popped and it would not move at all . . . ." Graham received treatment for his knee under workers' compensation, including physical therapy and eventual surgery, but stated that throughout his treatment his knee continually cracked, popped, and would give way or "buckle." In March 2015, Graham fell because his leg gave way as he was standing up from his chair in his home. Graham stated that he landed on his right side to keep from hitting a coffee table and that when he hit the floor, his "back popped in" and he experienced immediate pain in his neck and back.

¶3. Graham later testified that he saw Dr. George Salloum, an orthopedist, the next day, with whom he already had a previously scheduled appointment for his knee. According to Graham, he told Dr. Salloum about his continued knee/leg problems and his subsequent fall the night before and his resulting back pain. Dr. Salloum told Graham that he should follow up with Dr. Terry Smith, a neurosurgeon, for Graham's back concerns—as Dr. Smith had performed back surgery on Graham in 2007. In May 2015, during another follow-up appointment with Dr. Salloum following Graham's knee surgery, Dr. Salloum again indicated that Graham should see a neurosurgeon for his back/neck-related symptomology. Graham subsequently discussed a neurosurgery appointment with a nurse case manager and was informed that it would not be authorized under workers' compensation because he had preexisting back problems. Graham followed up with Dr. Robert Kimber, an orthopedic surgeon and spine specialist, under his own insurance, as Dr. Kimber was the last physician

2

Graham had seen for his back.

¶4. On June 22, 2015, Graham filed a petition to controvert. He sought benefits for a left knee injury and his subsequent back and neck injury. Prairie Farms filed their answer, admitting the left knee injury but disputing the claims for a back and neck injury. Graham filed a motion for medical treatment on August 18, 2015, requesting treatment for his back and indemnity benefits. Prairie Farms disputed the requested treatment and indicated their intent to obtain an Employer Medical Evaluation (EME). Prairie Farms then filed a motion to compel an EME. The AJ granted the motion, instructing Graham to attend the EME with Dr. Rahul Vohra.

¶5. Dr. Vohra reviewed Graham's medical records and examined him in person. With regard to Graham's left knee, Dr. Vohra agreed with Dr. Salloum's findings that Graham reached maximum medical improvement on June 9, 2015, and the 10% impairment assignment to the left lower extremity. Dr. Vohra also agreed with the restriction imposed by Dr. Salloum of no lifting over forty pounds, but otherwise opined that Graham's knee did not need further medical treatment. Because of Graham's previous left knee surgery, Dr. Vohra noted apportionment would apply; however, he did not opine as to what the apportionment should be because he did not have any medical records to support any preexisting impairment to the left knee. As to Graham's back pain, Dr. Vohra noted that Dr. Smith had previously performed a multilevel lumbar decompression; Dr. Salloum's medical records indicated that Graham had fallen several times but did not mention an injury resulting from any falls; and Graham had received pain-management treatment for his back prior to

3

the 2014 work-related knee injury. Dr. Vohra concluded that Graham's complaints of back pain and back-related symptomology were not related to or aggravated by the left knee injury and were separate issues.

¶6. Dr. Kimber was deposed by Prairie Farms regarding his treatment of Graham. Dr. Kimber acknowledged that Graham had longstanding chronic back problems and noted that he had first seen Graham in September 2013 prior to the July 2014 work injury. At the initial 2013 appointment, Dr. Kimber noted that Graham had severe degenerative disc disease. When Graham returned to Dr. Kimber in 2015 for back pain, Dr. Kimber noted that Graham had sustained a knee injury and subsequently undergone knee surgery. Dr. Kimber further opined that Graham's back pain and symptomology was worse in 2015 (post-knee injury) than when he saw Graham in 2013 (pre-knee injury). Dr. Kimber concluded in his medical report that the back injury happened after the knee injury and that Graham's back issues were aggravated by the knee/leg issues.

¶7. On September 29, 2015, a hearing on the merits was held before the AJ to determine (1) the existence and extent of permanent disability, if any, from the work-related left knee injury; and (2) whether a compensable back injury arose out of the July 25, 2014 work-related accident when Graham fell at home in March 2015 due to his knee buckling; and assuming compensability, whether Graham was entitled to temporary disability benefits and medical treatment. The parties stipulated that Graham sustained a compensable injury to his left knee on July 25, 2014. They also stipulated that Graham's average weekly wage was $713.63 and that Prairie Farms had paid Graham temporary disability payments and

4

permanent partial disability benefits.

¶8.     Following the hearing and a review of the medical records and testimony, the AJ found that Graham had (1) suffered a 50% industrial loss of use of the left knee and (2) subsequently suffered a compensable back injury arising out of the 2014 work-related knee injury.  The AJ further found that Graham was entitled to all reasonable and necessary medical treatment for his back injury as well as temporary indemnity benefits.  Prairie Farms appealed the decision to the full Workers' Compensation Commission, which unanimously adopted the AJ's findings and affirmed her judgment.  Prairie Farms now appeals the Commission's decision.

## STANDARD OF REVIEW

¶9.     "This Court employs a substantial-evidence standard of review to resolve a workers' compensation case . . . ." *Forrest Gen. Hosp. v. Humphrey*, 136 So. 3d 468, 471 (¶14) (Miss. Ct. App. 2014).  "[H]owever, the standard of review is de novo when the issue is one of law and not of fact."  *Id*.  "[R]eversal is proper where the Commission has misapprehended the controlling legal principles, as the standard of review in that event is de novo."  *Id*.  But "[a]bsent an error of law, we must affirm the Commission's decision if there is substantial evidence to support the Commission's decision."  *Id*.

¶10.     "In a workers' compensation case, the Commission is the trier and finder of facts." *Id*.  "When the Commission accepts the findings and conclusions of the administrative judge, this Court reviews those findings and conclusions as those of the Commission."  *Pruitt v. Howard Indus. Inc*., 232 So. 3d 822, 825 (¶7) (Miss. Ct. App. 2017).  "If the Commission's

order is supported by substantial evidence, this Court is bound by the Commission's determination, even if the evidence would convince us otherwise if we were the fact-finder." *Forrest Gen. Hosp.*, 136 So. 3d at 471 (¶14). "Substantial evidence requires more than a 'mere scintilla' of evidence, but it does not rise to the level of 'a preponderance of the evidence.'" *Harper ex rel. Harper v. Banks, Finley, White & Co. of Miss. P.C.*, 167 So. 3d 1155, 1162 (¶17) (Miss. 2015) (citation omitted). "Because the Commission serves as [the] ultimate fact-finder and judge of the credibility of witnesses, we may not reweigh the evidence that was before the Commission." *Pruitt*, 232 So. 3d at 825 (¶7) (internal quotation marks omitted).

## DISCUSSION

¶11. Prairie Farms argues that the Commission's decision in regard to both Graham's knee and back was not supported by substantial credible evidence. We examine each argument in turn.

I.    *Industrial Loss to the Left Lower Extremity*

¶12. Regarding Graham's knee, Prairie Farms argues that the Commission's finding that Graham sustained a 50% loss of industrial use of his left lower extremity was against the substantial weight of the evidence. For support, Prairie Farms points to the fact that Dr. Salloum assigned a 10% impairment rating to Graham's left knee. Prairie Farms also points out that Ty Pennington, a vocation counselor, evaluated Graham, produced a report, and testified at the hearing regarding Graham's employment possibilities. Pennington opined that Graham could obtain entry level wages, being in a range of $8.00 to $11.00 dollars per hour

6

and that there were positions available for which he qualified.

¶13.    In response to Prairie Farms' argument that the Commission's industrial-loss finding was unsupported by substantial evidence, we first note that "industrial loss" is not synonymous with "functional loss" (the impairment rating). "Functional loss is the same as medical disability and is concerned only with the physical impairment to the scheduled member[,]" and "disregards loss of ability to work." *Howard Indus. Inc. v. Robbins*, 176 So. 3d 113, 117 (¶¶19-20) (Miss. Ct. App. 2015). Industrial loss contemplates "whether a loss of wage-earning capacity has occurred." *Id*. at 115 (¶1). "[A]n injury that renders a worker unable to continue in the position held at the time of injury creates a rebuttable presumption of total industrial loss of the member"; however, "this presumption is subject to other proof of the claimant's ability to earn the same wages he received at the time of injury." *Id*.

¶14.    Here, it is undisputed that Graham was unable to continue in the specific position he held with Prairie Farms at the time of his injury. Upon our review of the record, the evidence before the Commission showed that both Dr. Vohra and Dr. Salloum agreed that Graham was restricted from lifting more than forty pounds. The evidence also demonstrates that Prairie Farms advised Graham that he had been permanently placed on light duty, and that they did not have any light-duty positions; as such, he was terminated that same day. There was also evidence showing that Graham participated actively with the WIN job center, was registered with the Mississippi Vocational Rehabilitation Agency, and had applied for numerous positions after his termination, but was unable to secure employment. Notably, the parties stipulated that Graham's pre-injury average weekly wage was $713.63, and the evidence

demonstrated Graham's post-injury wage-earning capacity was between $8.00 and $11.00 per hour. As such, we hold that substantial evidence supported the Commission's finding that Graham suffered a 50% industrial loss of use to the lower left extremity. Therefore, this issue is without merit.

## II. *Compensable Back Injury*

¶15. Prairie Farms states the Commission also erred by finding that Graham had sustained a compensable back injury arising out of his work-related knee injury. Specifically, Prairie Farms argues the evidence supports a finding that Graham's back problems were related to a preexisting, independent medical issue and not a result of the work injury from July 25, 2014. For support, Prairie Farms points to evidence that Graham had back surgery before he injured his knee, underwent back-related pain management, had been diagnosed with degenerative disc disease, and had been restricted from lifting more than thirty-five pounds since 2007. Prairie Farms also argues that Graham's testimony and medical records presented conflicting time frames regarding his fall.

¶16. "Under workers' compensation law, the claimant has the burden of proof in showing the causal connection between the claimant's employment and the resulting disabling condition." *Tate v. Int'l Paper Co.*, 194 So. 3d 136, 139 (¶13) (Miss. Ct. App. 2015) (quoting *Clark v. Spherion Corp.*, 11 So. 3d 774, 777 (¶15) (Miss. Ct. App. 2009)). "Unless common knowledge suffices, medical evidence must prove not only the existence of a disability but also its causal connection to the employment." *Id*. at 138-39 (¶13) (quoting *Franks v. Foam Craft*, 929 So. 2d 350, 353 (¶13) (Miss. Ct. App. 2006)).

8

¶17. It is clear from the medical records and medical testimony contained in the record that Graham experienced back pain and other back-related issues prior to the work-related knee injury and subsequent fall when he injured his back. However, the Commission properly acknowledged that "[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct." *BellSouth Telecomms. Inc. v. Harris*, 174 So. 3d 909, 912 (¶15) (Miss. Ct. App. 2015). Additionally, "[a]n injury arises out of and in the course of employment even if it amounts to aggravation or exacerbation of a pre[]existing condition." *Miller v. Johnson Controls*, 138 So. 3d 248, 254 (¶28) (Miss. Ct. App. 2014).

¶18. In this case, Dr. Vohra opined that Graham's back injury and pain were not caused by or related to his knee injury, and Dr. Kimber opined that Graham's back problems were causally related to the knee injury. "[W]henever the expert evidence is conflicting, the reviewing court will affirm the Commission whether the award is for or against the claimant." *Crittenden v. Kellogg Brown & Root LLC*, 228 So. 3d 848, 853 (¶10) (Miss. Ct. App. 2017) (quoting *Raytheon Aerospace Support Servs. v. Miller*, 861 So. 2d 330, 336 (¶13) (Miss. 2003)). Again, "the Commission serves as ultimate fact-finder and judge of the credibility of witnesses," and this Court "may not reweigh the evidence that was before the Commission." *Pruitt*, 232 So. 3d at 825 (¶7).

¶19. Here, the Commission's finding was supported by substantial credible evidence. The parties had stipulated that Graham's knee injury arose out of the course of his employment.

9

The Commission found Graham's testimony was credible when he testified that he fell at home due to his knee buckling, his back popped, and he immediately experienced back pain. The Commission discussed the fact that Dr. Salloum's medical notes from March 24, 2015, indicated that Graham was falling due to his knee buckling; and on March 27, 2015, Dr. Salloum wrote that Graham was having back problems. The Commission then noted that these medical notes were all after Graham's fall in March 2015. We also note that the record does not show any testimony of back pain or evidence of back-related medical appointments for eighteen months prior to his fall. Finally, the Commission noted that Dr. Kimber, a back specialist, believed Graham's back pain was aggravated by and causally related to his knee injury. Because the Commission's findings were supported by substantial credible evidence, we affirm.

¶20. **AFFIRMED.**

**IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**